# *Ex parte* Miller.

## *Petition for Writ of Mandamus or Prohibition.*

1. *Injunction; acts committed before injunction bond given not breach of injunction.*—Where an injunction has been granted, but is not to go into effect until the bond is executed, acts done between the time of granting the injunction and the execution of the required bond, do not constitute a breach of the injunction, placing the defendant in contempt of court, although such acts would be violative of the writ if it had become fully operative.

2. *Same; same.*—Defendants in a suit where an injunction has been issued, can not evade the responsibility for violating the writ of injunction, by doing through subterfuge that which in terms is not a violation of the writ, yet produces the same effect by accomplishing substantially that which they were enjoined from doing.

3. *Same; suing out writ of possession in ejectment suit violative of injunction; contempt of court.*—Where upon a bill filed to enjoin the defendant from the further prosecution of a suit in ejectment, an order is granted authorizing the issuance of a writ of injunction upon the execution by the complainants of a bond conditioned and payable as provided by law, and between the date of the order granting the injunction and the execution of the bond, judgment is recovered in the ejectment suit, but not until after the injunction bond had been executed and the writ was served upon the defendant, is the writ of possession issued upon the judgment in the ejectment suit, under which the complainants are dispossessed of the lands involved in the controversy, such act on the part of the defendant in suing out the writ of possession, constitutes a breach of the injunction, and subjects him to the penalties of contempt, in disregarding the orders of the court.

4. *Same; same; same.*—It is no objection to the contempt proceedings in such a case, that there was pending at the time of the filing of the petition for an attachment in the contempt proceedings, a motion involving the equities of the bill, which had not been disposed of.

5. *Same; same; same.*—In such a case, it is not necessary for the defendant to be served with notice of the contempt proceedings, when he appears and defends against such proceedings.

Frank Miller filed an original petition in this court, addressed to the Judges of the Supreme Court, asking for the issuance of a writ of prohibition, *mandamus* or other remedial writ, to vacate and annul a decree rendered on January 21, 1901, by the chancellor of the northeastern chancery division in contempt proceedings, to prohibit and prevent the said chancellor in the enforcement of said decree or in said contempt proceedings in said cause. The contempt proceedings were had in the suit pending in the chancery court of Shelby county wherein William Kirkpatrick and Sarah Kirkpatrick were petitioners and the complainants were defendants. The purpose of the bill filed by William Kirkpatrick and Sarah Kirkpatrick against Frank Miller and the other defendants, was to have an action of ejectment enjoined, and said parties restrained from further proceedings in said ejectment suit. The petitioner asks for the issuance of a writ of prohibition, *mandamus* or other remedial process, because the chancellor in rendering his decree in the contempt proceedings exceeded his jurisdiction for the following reasons: 1. There is no equity in the bill filed in said cause on which said injunction issued and for an alleged violation of which is the basis of the said decree in the contempt proceedings, and neither the chancery court nor the said chancellor had any jurisdiction of the subject matter of the bill. 2. There was no rule *nisi* ever issued and the violation charged is for a technical violation of an injunction. 3. The said chancellor held that to be a contempt which is in law no contempt and can not be, in that it is in effect held that the injunction writ enjoined the prosecution of a suit after judgment, for possession of lands, whereas, the injunction writ was against the prosecution of suits before judgment. 4. There was no rule *nisi* served on the defendant. 5. The said decree was rendered when the defendant was not actually in court nor constructively in court, and the court had no jurisdiction over the defendant for the purpose of such decree. 6. The decree was rendered in vacation and is a decree of the chancellor merely and not of the court, whereas the court only can punish contempt. 7. Said decree is void for that,

the chancellor had no jurisdiction to render said decree until the motions to dismiss the bill for want of equity, and dissolve the injunction had been heard and passed upon. The other facts of the case are sufficiently stated in the opinion.

L. C. DICKEY, for petitioner.—A writ of prohibition, or other remedial writ, will be awarded to prevent the enforcement of a decree in contempt proceeding, when there is no equity n the bill.—*Ex parte Morgan Smith,* 23 Ala. 94; *Ex parte Walker,* 25 Ala. 81; *Ex parte Green and Graham,* 29 Ala. 52; *Pond v. Lockwood,* 8 Ala. 669.

There was no rule *nisi* issued in this case and the general rule is, to give a court jurisdiction notice must issue to show cause why an attachment should not issue as prayed, except where defendant is present in court with full knowledge of the order which the record does not show to be the fact in this case.—Ency. of Pleading and Practice, p. 782 and cases cited, note 1; *Ex parte Wright,* 65 Ind. 504; *People v. Wilson,* 5 John N. Y. 368; 54 Fed. Rep. 746; 2 Dan. Ch. Pr. 1250; *Ex parte Walker, supra.*

Where a technical violation of an injunction writ is charged in a contempt proceeding, and there is a motion to dismiss the bill for want of equity pending, the defendant has the legal right to have said motion considered and passed upon.—High on Injunctions, § 1417 and cases cited in note 4; *Endecot v. Mathis,* 1 Stocto C. 110; *Krone v. Kings County El. R. Co.,* 3 N. Y. Supp. 149; *Koeler v. Dobberphul,* 56 Wis. 497; *Crabtree v. Baker,* 75 Ala. 91.

The said decree is void for that the chancellor had no jurisdiction to render said decree until the motions to dismiss the bill for want of equity and dissolve the injunction had been passed upon.—High on Inj., § 1417 and cases cited in note 4; Beach on Inj., § 267; *Krone v. Kings County,* 3 N. Y. Supp. 149; *Koeler Case,* 56 Wis. 497.

Where an injunction is granted, but not to take effect or to be in force until bond is executed, acts done in violation thereof between the time of the granting of

[*Ex parte* Miller.]

the injunction and the execution and filing of the bond, do not constitute a breach of the injunction.—Beach on Inj., § 253; *State v. Irwin*, (W. Va.), 4 S. E. Rep. 413; *Dubbuly v. Blacks*, Admr., 38 Ala. 198; *Adams et al. v. Olive*, 57 Ala. 249; *Ex parte Sayre*, 95 Ala. 290.

. J. W. BUSH, *contra*, cited *Gates v. McDaniel*, 3 Port. 356; *Crabtree v. Baker*, 75 Ala. 91; 19 Amer. & Eng. Encyc. of Law, 268; *Ex parte Green*, 29 Ala. 52; *Ex parte Smith*, 34 Ala. 455; *Ex parte Hill*, 38 Ala. 429; *Atkins v. Siddons*, 66 Ala. 453.

HARALSON, J.—1.  In this State it is provided that injunctions can be issued alone, upon the execution of bonds, such as are prescribed by the statute. Section 786 of the Code provides, that no injunction must issue to stay proceedings after judgment in a personal action until the party applying for it gives bond and security, as prescribed. Section 787 directs, that no injunction must issue to stay proceedings at law for the recovery of land, unless the party give bond and security as provided; and section 788 requires, that in other cases,—than those specified above,—the party must give bond with surety in such sum as the officer granting the injunction directs, payable and conditioned as prescribed. These sections cover any and every case that may arise for an injunction. To issue one without the bond prescribed, would be irregular. *Thorington v. Gould*, 59 Ala. 461. Whatever might be the rule, in the absence of statutory regulations on the subject, as to the time the writ becomes operative, we apprehend, under our statute, it can never be operative, until the injunction bond has been executed. Such an order is conditional in its nature, and there can be no injunction, and consequently no contempt for its violation, until the bond has been given.—2 High on Inj., § 1429; 1 Beach on Inj., § 269; *Winslow v. Nayson*, 113 Mass. 411.

It is furthermore held, that where an injunction has been granted, but not to take effect until a bond is executed, acts done between the time of granting the in-

junction and the execution of the bond, which would
be violative of the writ if fully operative, do not consti-
tute a breach of the injunction.—1 Beach on Inj., § 253.

2.   In determining whether there has been an actual
breach of the writ, it is necessary to observe the ob-
jects for which the relief was sought and granted and
the circumstances attending the case; and, as observed
by Mr. High, "the violation of the spirit of an injunc-
tion, even though its strict letter may not have been
disregarded, is a breach of the mandate of the court."
High on Inj., § 1446; 1 Beach on Inj., § 251; Kerr on
Inj., 641.  Again, "where  *   *   *  part of the injury
complained of has already been done by defendant, be-
fore the injunction issues, but after the writ is allowed,
he does acts in furtherance of such injury, he cannot
protect himself from the consequences of a violation, by
the fact that the injunction did not in terms prohibit
the act which he committed, and he will accordingly be
held guilty of contempt."—High on Inj., § 1447.  "Nor
will the court permit defendants to evade responsibility
for violating an injunction by doing through subter-
fuge, that which, while not in terms a violation, yet pro-
duces the same effect by accomplishing substantially
that which they were enjoined from doing."—*Ib*. § 1433;
*Gibbs v. Morgan*, 39 N. J. Eq. 79.

In this proceeding it appears, that on the 14th March,
1898, in a bill pending in the chancery court of Shelby
county, an order was granted by a circuit judge for a
writ of injunction, upon the execution by complainants
of a bond in the sum of $300, conditioned and payable
as provided by law; and on the 28th of the same month,
the bond was duly executed.  The prayer of the bill for
the injunction was, that defendants (Frank and J. B.
Miller) be commanded "to take no further steps in the
suits as shown by the paragraphs of the bill," etc., one
of which suits was for a personal judgment against
complainants on mortgage notes, and the other, an
action against them, in the nature of an action of eject-
ment, for the recovery of the possession of the mort-
gaged lands,—the latter suit being the one out of which
this proceeding grew, and both of them pending in the
circuit court of Shelby county.

The writ of injunction issued on the 28th March, 1898, on an injunction bond taken and approved on the same day, enjoining defendants (to state its language) "from the further prosecution of the above named suit for judgment on notes for $650, or from the further prosecution of said suit in ejectment filed by you in said circuit court on the 6th day of January, 1898, against the said William Kirkpatrick and Sarah Kirkpatrick, until further orders of this court," and the same was duly executed on said Frank Miller on the 30th March, 1898.

On the 24th March, the respondents—Millers—took a judgment in said circuit court, for the lands described in the bill, which was four days before the writ of injunction was issued and placed in the hands of the sheriff and served on the defendants. On the 18th April, thereafter, a motion was made by defendants to discharge the injunction, which motion, as averred, is still pending in said chancery court; and on the 29th April, as is further averred, the defendants "caused the issuance of an execution against complainants," and on the 2d of June, 1898, they were "under and by virtue of said execution, dispossessed of the lands described in the bill of complaint," etc.

The evidence shows clearly enough, that when complainants were dispossessed of said lands, the said Millers knew and had notice of the issuance of said writ of injunction. The petition of complainants for a rule to show cause why the defendant, Frank Miller, should not be attached, was made and filed in said chancery court on the 16th March, 1899, and on the same day he filed in said court a demurrer to and motion to strike said petition. At the September term, 1899, of said court, the demurrers to and motion to strike said petition were overruled. Afterwards, the court made its decree in said contempt proceedings, ordering said Frank Miller to be attached and committed to jail, unless (to quote the language of the order) "said Frank Miller shall forthwith, and within ten days from and after the day on which the notice of this order shall be served upon him, return and restore the possession of the premises described in the bill in this case to the complainants [therein]," etc.

4.   It thus appears, that the injunctive writ was to enjoin said Miller "from the further prosecution of said suit in ejectment," which writ was served on him, on the 30th March, 1898, the bond for its issuance having been filed on the 28th of that month, and that on the 24th of March, 1898, said Miller obtained a judgment by default against the petitioner for contempt, for the recovery of said lands.

The contention of the said Miller is, that he was not restrained by said writ from taking any steps in said cause until the bond for the writ had been executed, and until the writ itself had been served on him; that he took his judgment in said cause, four days before said bond had been executed, and, therefore, he was guilty of no violation of the mandate of said writ, for having taken his said judgment.   He further contends, that the injunction, being against the further prosecution of said suit, was *functus officio,* since the judgment when the writ was issued, had been already obtained, and that the issuance of execution or writ of possession thereon, thereafter, was no violation of the terms of said injunction, nor was the execution of the writ of possession in the ejection of the petitioners from the lands, and placing said Miller in possession thereof, any violation of said writ rendering him liable for disobedience to the orders of said court.

It must be conceded, that procuring said judgment at the date it was taken, without more, was not a literal violation of the terms of said writ, constituting a breach thereof.—Beach on Inj., § 253.   The object and spirit of the injunction, however, was not simply to prevent a judgment in that cause, but its real purpose and spirit were, to prevent the plaintiff therein, from dispossessing defendant of said lands.   If no writ of possession could have been issued on such a judgment the judgment itself would have been barren, and the defendant therein would have had no occasion to seek to enjoin it. It was to prevent his being turned out of his premises, that the defendant in said judgment was seeking the injunctive process of the court.   The words, "from the further prosecution of said suit," when regard is had to the

terms of the writ, its purposes, and the condition of the parties, are not wrested from their proper signification, when made to include any further proceeding, looking to the accomplishment of the main purpose of said action,—the ejection of defendant from his lands; and properly construed, they do include the issuance of said writ of possession and its execution, as well as the obtaining of the judgment itself. Courts exact a strict and implicit obedience to their injunctions, and will not permit them to be defeated by mere subterfuges on the part of those required to obey them; and the doctrine so well settled is of application, that the courts will not "permit defendants to evade responsibility for violating an injunction by doing through subterfuge that which, while not in terms a violation, yet produces the same effect by accomplishing substantially that which they were enjoined from doing." High on Inj., § 1433; *Wayman v. Southard*, 10 Wheat. (U. S.) 1, 29; 24 Am. & Eng. Ency. Law (1st ed.), n. 2; *Gibbs v. Morgan, supra*. We conclude that the issuance of said writ of possession was a manifest and palpable violation of the injunction.

5. That a proceeding of this character cannot be entertained, until the equities of the cause in which it is made, had been determined, is against unbroken authority on the subject.—High on Inj., § 1416, and cases cited; Beach on Inj., § 247. Nor is there any merit in the insistence, that the petitioner was not served with notice to show cause why he should not be attached. This was unnecessary, when he appeared, as he did, and defended against the proceeding.

Again, the objection that the decree in the contempt proceeding, was rendered in vacation, and is a decree of the chancellor merely and not of the court, is without foundation. It appears by the decretal order that this proceeding was submitted by consent at the September term of the court, 1900, and held for decree in vacation. The decree was rendered on January 21st and filed January 22d, 1901, and is within rule 79 of chancery practice.

6. We have examined all the objections to the order of the court below in awarding the attachment for

contempt, and finding them to be without merit, the application here for *mandamus* or prohibition is denied. The order of this court, made and entered on the 14th February, 1901, suspending the execution of said attachment writ, is revoked, leaving the same in full force, to be executed in the manner therein directed.

Petition for *mandamus* or prohibition denied.